UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| In Re:<br><br>Masoud Lahijani,<br><br>　　　　　　Debtor. | Case No.:　　22-14847-ABA<br><br>Chapter:　　13<br><br>Judge:　　Andrew B. Altenburg, Jr. |
|---|---|

## MEMORANDUM DECISION

Essentially before the court is a dispute as to the allowed amount of an undisputed creditor's prepetition claim and whether that claim is secured. For the reasons set forth below, the court finds that the creditor holds an allowed secured claim which must treated as such and paid together with interest calculated in accordance with N.J. Ct. R. R. 4:42-11(a)(iii) and costs. What is more, the creditor is entitled to post-petition interest on his secured claim pursuant to 11 U.S.C.A. § 506(b) and as such, the debtor must modify his chapter 13 plan to properly account for the secured claim.

## JURISDICTION AND VENUE

This matter before this court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (O), and the court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, referring all bankruptcy cases to the bankruptcy court. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## PROCEDURAL HISTORY

On June 14, 2022, Masoud Lahijani filed this Chapter 13 bankruptcy case. On Schedule E/F of his petition, Lahijani disclosed Tarunkant Mithani's claim as an unsecured priority debt, undisputed, non-contingent, and liquidated, in the amount of $11,000. Doc. No. 10, p. 12. In his chapter 13 plan, Lahijani proposed to pay the claim as a priority with no interest. Doc. No. 13, Part 3.

Mithani filed a proof of claim asserting a secured claim arising out of a perfected docketed judgment lien in the amount of $23,696.13. (Claim No. 1-1) (the "Claim").[1] Mithani has filed

---

[1] Inexplicably, Lahijani, and in reality, his counsel, had described Mithani's claim as *deposits by individuals.*

several amendments to the Claim, as well as other pleadings, asserting different amounts due—with the latest amount claimed due as $25,623. As a result, this court is tasked with not only determining if the Claim is allowed but also with fixing the proper amount of that claim. Thereafter, Mithani filed a Motion to Provide Complete and Accurate Information on Secured Claims and Lien Priority, Doc. No. 22 (the "Motion"), and Lahijani filed opposition thereto. Doc. No. 28. Lahijani also filed an objection to the amount of the Claim, Doc. No. 33 ("Claim Objection"), and Mithani filed a response thereto. Doc. No. 35. Several hearings were conducted, multiple supplemental pleadings were filed, and after a hearing on November 8, 2022, the parties were instructed to file their final pleadings, with a final hearing, if required, to be held on December 6, 2022. On December 6, this court took the matter under advisement. With that, the record is closed, and this matter is now ripe for disposition.

### RELEVANT UNCONTESTED FACTS

Lahijani resides at 2041 Lucas Lane, Voorhees, NJ 08043 (the "Residence"). Doc. No. 1. He values the Residence at $98,100. Doc. No. 10, p. 3. He only lists one secured creditor with a lien against the Residence—PNC Mortgage—with a claim in the amount of $52,652. Doc. No. 10, p. 11. PNC Mortgage timely filed a proof of claim stating a secured claim of $52,184.46. Claim No. 2-1.

On June 28, 1995, Mithani obtained a judgment by consent in the Superior Court of New Jersey against Lahijani in the amount of $19,152 (the "Judgment"). Doc. No. 22-1, ¶ 1; Doc. No. 28, Ex. A. The Judgment awarded legal interest accruing thereafter. Doc. No. 28, Ex. A. Lahijani was represented by counsel in the state court matter and actually signed the Judgment on his own behalf. *Id*. The Judgment was recorded as a lien on July 17, 1995 as Judgment No. J 160740-95 ("Judgment Lien"). Doc. No. 22-1, ¶7 & Ex. A., pp. 3-4.

On September 27, 1995, Lahijani filed his first bankruptcy case, docketed at Bankr. Case. No. 95-15635, in this court. In that case, Mithani commenced an adversary proceeding objecting to the dischargeability of the Judgment. Doc. No. 22-1, ¶ 3 & Ex. B. On July 29, 1996, Lahijani, who was represented by counsel, and Mithani, entered into a Consent Order in that adversary proceeding in which they specifically acknowledged the Judgment and agreed that $11,000 of it was nondischargeable as an exception to discharge pursuant to 11 U.S.C. § 523. (the "Consent Order"). Doc. No. 22, Ex. B; Doc. No. 28, Ex. C. Drafted by Lahijani's counsel, the Consent Order, only released Lahijani from the allegations contained in the complaint filed in the adversary proceeding. *Id.* The Consent Order, however, was silent as to the Judgment Lien. When Lahijani obtained a discharge in the case, the amount due on the Judgment beyond the $11,000 was discharged. *See* Doc. No. 28, Ex. B; 11 U.S.C. § 524(a).

On December 21, 2012, Mithani filed a motion to revive the Judgment in state court pursuant to N.J.S.A. 2A:14-5. Doc. No. 22-1, ¶ 4.[2] On January 11, 2013, the state court entered an

---

[2] As explained below, Mithani was within his rights to renew the Judgment.

*Order to Revive Judgment* wherein the docketed Judgment was renewed for an additional twenty years. Doc. No. 22-1, ¶ 4 & Ex. C; Doc. No. 28, Ex. G.

Then, on March 4, 2022, the state court issued a writ of execution in connection with the Judgment.[3] Doc. No. 22-1, ¶5 & Ex. D. On April 1, 2022, the state court issued an order permitting the sale of the Residence on account of the Judgment and Writ even though *the motion authorizing the sale was opposed*. Doc. No. 18, Ex. H.[4] There is no evidence that the Judgment, the order revising the Judgment, or the order permitting the sale of the Residence were, or can be, appealed.

Before the Residence could be sold, Lahijani filed this bankruptcy case.

Lahijani, through his counsel, has either conceded to these facts or has produced no evidence, valid argument, or case law to refute these facts.

## DISCUSSION

First and foremost, without question, Mithani possesses an allowed claim against Lahijani. Lahijani has acknowledged as much by 1) disclosing Mithani on his bankruptcy schedules as a creditor with an undisputed, non-contingent, liquidated claim, and 2) providing for payment of that claim through his chapter 13 plan. Indeed, even Lahijani's pleadings and concessions during oral argument, as well as the evidence presented, corroborate that Mithani has an allowed claim. The issues that remains are the amount of the claim and whether it is secured.

### A.  MITHANI POSSESSES A SECURED CLAIM

Lahijani puts forth several theories on why Mithani's claim is not secured. First, he argues that the fact that the lien search performed by the title company in connection with the PNC mortgage loan in 2018 failed to show any liens against the Residence evidences that the Judgment Lien no longer existed or, at a minimum, is subordinate to the lien of PNC Mortgage. These arguments are flawed, and Lahijani's counsel conceded at the November 8 hearing, he has no evidence or case law that would support them.

---

[3] It appears that, despite the Consent Order reducing the amount due under the Judgment to $11,000, Mithani improperly sought the Writ for the full original amount due under the Judgment. This was obviously an error as the amount sought to be collected at that time should have been $11,000 plus appropriately calculated interest. Mithani is bound to the settlement set forth in the Consent Order, as it is a contract. *See Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1970); *Nolan v. Lee Ho,* 577 A.2d 143, 146 (N.J. 1990). The revival of the Judgment does not in any way defeat the settlement memorialized by the Consent Order. Ultimately, though, this error is of no impact here since, as set forth below, Mithani has an allowed secured claim and both Mithani, through his Motion, and Lahijani, through his Claim Objection, have asked this court to fix the amount of the secured claim. *See also* 28 U.S.C. § 157(b)(2)(B); 11 U.S.C. §§ 502 & 506; Fed. R. Bankr. P. 3007.

[4] I can take judicial notice of this state court pleading as it is not subject to reasonable dispute and is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *In re Soto*, 221 B.R. 343, 347 (Bankr. E.D. Pa. 1998). Likewise, I can take judicial notice of the docket entries in this case and the prior case. Fed. R. Evid. 201; Fed. R. Bankr. P. 9017 (incorporating Fed. R. Evid. 201); *see also In re Indian Palms Associates, Ltd.,* 61 F.3d 197. 205 (3d Cir. 1995).

It is well established that a properly docketed judgment becomes a judgment lien on any real estate owned by the debtor. *Borromeo v. DiFlorio*, 976 A.2d 388, 394 (App. Div. 2009); N.J. Stat. Ann. § 2A:16-1 (West) (a judgment binds real estate "from the time of the actual entry of such judgment on the minutes or records of the court"). Entry of a judgment is all that is necessary to establish a lien against a judgment debtor's real property—levy and execution on real property are not required. *New Brunswick Sav. Bank v. Markouski*, 587 A.2d 1265, 1269 (1991). "The judgment . . . , when recorded on the docket of the Clerk of the Superior Court, functions as notice of the debtor-creditor relationship." *Id; see also* N.J. Stat. Ann. § 2A:16-11 (West) ("The entry required by this section shall constitute the record of the judgment, order or decree and a transcript thereof duly certified by the clerk of the court shall be a plenary evidence of such judgment, order or decree."). The basic rule is "first in time, first in right," and the purpose of this rule "is to give constructive notice to subsequent purchasers, encumbrancers and others who may deal with title to real estate upon which a judgment constitutes a lien." *Les Realty Corp. v. Hogan*, 714 A.2d 366, 368 (Ch. Div. 1998). That the title search company failed to discover the judgment lien does not change the fact that the lien existed, irrespective of the constructive notice provided by entry of the judgment. *See, e.g., United States v. St. John's Gen. Hosp.*, 875 F.2d 1064, 1072 (3d Cir. 1989) (rejecting the argument that a mistake made by a title company meant that the purchaser of a property did not have adequate notice).

Here, Mithani, with Lahijani's consent, obtained the Judgment in state court. Thereafter, the Judgment Lien was recorded and became a lien against the Residence in accordance with New Jersey law. Accordingly, Mithani's claim, which arises from the Judgment, is secured, as it is a lien against the Residence.

Clearly, at the time of the PNC Mortgage loan, the Judgment (with a portion of its amount discharged) and the Judgment Lien existed. The fact that the state court issued an order permitting the sale of the Residence subject to the Judgment Lien[5] is further proof positive that the perfected Judgment Lien was *still in place*. That the title company failed to pick up the Judgment Lien does not mean it did not exist, just that the title company may have made a mistake. *See* N.J.S.A. 17:46B-1 (title insurance companies insure title based on "the correctness of searches relating to the title to real property); *Walker Rogge, Inc. v. Chelsea Title & Guar. Co.*, 116 N.J. 517, 535 (1989) (title company might be liable for negligence as a title searcher).

Furthermore, Lahijani knew at the time of his loan with PNC Mortgage that at minimum, the Consent Order and the obligation thereunder existed, as he had not paid it. Having been given ample opportunities to do so, Lahijani provided no evidence or caselaw as to how the Judgment Lien was extinguished or how the Judgment Lien is subordinated to the PNC Mortgage. "[It] is not the Court's job to do the Debtor's homework: 'when parties fail to fully flesh out arguments in their papers, "there can be no reasonable expectation that a court will decrypt their briefs in the desired way."'" *In re Butko*, 624 B.R. 338, 367 (Bankr. W.D. Pa. 2021). Mithani should not suffer due to the mistake made by a title company or to Lahijani's alleged ignorance.

---

[5] Indeed, the order permitting the sale was entered under the Judgment Lien number. Doc. No. 18, Ex. H. If the Judgment Lien was not perfected, the state court would not have entered the order under the Judgment Lien number.

Next, Lahijani suggests, without evidence or caselaw, that because he was not properly served with any of the post-judgment pleadings in aid of execution in the state court, Mithani somehow no longer possesses a secured claim. This position is merely a red herring. To the extent this is meant to object to the Judgment itself, as opposed to execution on the judgment, that argument is barred by the *Rooker-Feldman* doctrine. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The Judgment has been final since 1995, and arguably, its finality was affirmed through Lahijani's entering into the Consent Order in 1996, consenting to $11,000 of the Judgment being nondischargeable. As set forth in further detail below, the *Rooker-Feldman* doctrine deprives this federal court of subject matter jurisdiction to hear collateral attacks on the Judgment or reviewing final determinations of state court decisions. Because the Judgment, the Consent Order, and the Order reviving the Judgment are undoubtedly final, Lahijani is prevented from challenging the validity of the Judgment Lien obtained by operation of New Jersey law upon the docketing of the Judgment.[6] *Id.* Consequently, Mithani retains an allowed secured claim against the Residence.

Lahijani further makes a unique argument that the Consent Order "discharged" the Judgment in favor of a federal bankruptcy judgment, the latter of which expired when it was not renewed within 20 years. Lahijani does not cite to any case law supporting any part of his "discharge/new judgment" theory, nor is this court aware of any. On the contrary, bankruptcy courts, *including this court,* have routinely found that courts can enter nondischargeability orders without entering new money judgments. *See, e.g., In re Hamilton*, 584 B.R. 310, 324 (B.A.P. 9th Cir. 2018), *aff'd*, 785 F. App'x 438 (9th Cir. 2019) ("The bankruptcy court also may (but is not required to) issue a new money judgment . . . . Where there is a valid state court money judgment, the bankruptcy court should not issue a new money judgment."); *In re Maudsley*, No. ADV. ND-04-01013-RR, 2006 WL 6810971, at *7 (B.A.P. 9th Cir. Jan. 20, 2006) ("A bankruptcy court generally does not enter a new money judgment but simply declares that the state court awards, or some portion of them, are nondischargeable."); *In re Smith*, 605 B.R. 538, 548 (Bankr. D. Utah 2019) ("In a nondischargeability action, where there is a pre-petition [judgment], the bankruptcy court is only addressing whether the judgment debt is dischargeable and not whether the debt exists or its amount. . . . Therefore, the Bankruptcy Court is technically not issuing a new money judgment, but is rather making a ruling that the [] money judgment is nondischargeable . . . ."); *In re Fisher*, No. 16-12991-ABA, 2017 WL 590306, at *9 (Bankr. D.N.J. Jan. 24, 2017).

What is more, when simply determining the nondischargeability of a judgment, courts ultimately look to the underlying claim when calculating the amounts due. *In re Smith*, 605 B.R. at 548 ("the rate of interest set forth in the District Court judgment is the proper rate of interest on the nondischargeable debt"); *In re Hamilton*, 584 B.R. at 324 ("because the bankruptcy court did not enter a new money judgment, the bankruptcy court should not have eliminated or reduced any of the interest that is an integral part of the State Court Judgment."); *In re Asbra*, 641 B.R. 589, 613 n.22 (Bankr. S.D. Ohio 2022) (holding in nondischargeability action, "As this court did not

---

[6] And considering that the state court indicated that Mithani's motion was opposed in its Order permitting the sale of the Residence, it appears that Lahijani had the opportunity to raise all these arguments before the state court but apparently failed to do so or, was unsuccessful in doing so. There is a question of whether any challenge can be brought at all.

liquidate the amount of the judgment, the appropriate interest rate is as provided in the state court judgment"); *In re Talasazan*, No. 1:16-AP-01119-MT, 2021 WL 5702690, at *25 (Bankr. C.D. Cal. 2022), *aff'd*, No. 1:16-AP-01119-MT, 2022 WL 17410688 (B.A.P. 9th Cir. 2022) (applying the *Hamilton* holding that the state post-judgment interest rate applies for a nondischargeable debt).

Here, nothing in the Consent Order provides for a new money judgment. In the absence of any such language, it is axiomatically incorrect to argue that a judgment holding a debt nondischargeable has the effect of discharging that same debt. Moreover, the Consent Order specifically acknowledges the Judgment against Lahijani and only declares $11,000 of it nondischargeable—it is completely silent as to the extinguishment of the Judgment or Judgment Lien. It does not replace the Judgment. It does not prohibit Mithani from exercising his state court rights under the Judgment and Judgment Lien. If either Lahijani or his counsel, who drafted the Consent Order, thought that Mithani was trading his secured Judgment Lien in exchange for an unsecured nondischargeable claim of $11,000 and nothing more, surely the Consent Order would have so provided.[7] To accept Lahijani's argument begs the question: Why would Mithani give up his secured Judgment Lien for a piece of paper giving him less than what he was owed? It makes no sense, and despite ample opportunity to do so, Lahijani has produced no evidence or caselaw to explain it. The fact that the state court entered an order authorizing the sale of the Residence pursuant to the Judgment and Judgment Lien further evidences that they were not extinguished under this "discharge/new judgment" theory. Accordingly, Mithani has demonstrated that he possesses an allowed secured claim—with the proper amount to be determined by this court.

Additionally, Lahijani has provided no support for his theory that the revival of the judgment somehow extinguished the Judgment and/or the Judgment Lien. This is hardly a surprise, since such a result would contradict the plain language of N.J.S.A. § 2A:16-1, which explicitly states that judgment liens run "from the time of the *actual* entry." The theory is baseless and is rejected. This holding is in accord with other jurisdictions. *See, e.g., Verner v. Bookman*, 31 S.E. 283, 284 (S.C. 1898) (a revived judgment operates as "a continuous lien from the date of its entry, and preserves its rank of priority as against all liens existing against the judgment debtor during the period of its original active energy"); *King v. Morris*, 40 Ga. 63, 63 (1869) ("revived judgments will relate back"). Consequently, this court rejects all of Lahijani's arguments and calculations based on this theory.

This discharged Judgment-in-favor-of-a-federal-bankruptcy-judgment theory also flies in the face of the *Rooker-Feldman* doctrine. *See Rooker*, 263 U.S. 413; *Feldman*, 460 U.S. 462. Having found that the Consent Order only affected the nondischarged portion of Mithani's claim and not its validity, this court lacks jurisdiction to entertain further challenges to the Judgment. The *Rooker-Feldman* doctrine deprives this federal court of subject matter jurisdiction to hear collateral attacks on the Judgment or reviewing final determinations of state court decisions. Because the Judgment and the Order reviving the Judgment are final, Lahijani is prevented from

---

[7] The Consent Order does contain language releasing Lahijani from liability for the allegations in the adversary proceeding. Doc. No. 28, Ex. C. Notably missing however, is any direct reference to the Judgement or the Judgment Lien. And, since Lahijani produced no evidence to the contrary and is estopped from doing so now, this court will not, in the absence of clear evidence to the contrary, hold that the Judgment or the Judgment Lien were extinguished by the Consent Order.

challenging the validity of the Judgment Lien granted by the state court in this proceeding. The *Rooker-Feldman* doctrine prevents "state-court losers [from] complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

The Third Circuit has recognized four requirements that must be met for the *Rooker-Feldman* doctrine to apply:

(1) the federal plaintiff lost in the state court;

(2) the plaintiff "complain[s] of injuries caused by [the] state court judgments;"

(3) those judgments were rendered before the federal suit was filed; and

(4) the plaintiff is inviting the district court to review and reject the state judgments.

*Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (citing *Exxon Mobil Corp.*, 544 U.S. at 284). The Third Circuit further held, "The second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim." *Id.* The court framed the second requirement "as an inquiry into the source of the plaintiff's injury," distinguishing the case where the injury stems from the state court's judgment from the case where the injury stems from the defendant's conduct. *Id.* The Third Circuit, applying *Exxon*, has recently found that there is some limitation to the doctrine—there has to be finality of the judgment. *Malhan v. Sec'y United States Dep't of State*, 938 F.3d 453, 459 (3d Cir. 2019). It clarified that there is a final judgment for the purposes of the *Rooker-Feldman* doctrine where "'the state action has reached a point where neither party seeks further action,'" such as when "a lower state court 'issues a judgment and the losing party allows the time for appeal to expire.'" *Id.* at 459 (citing *Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo del Puerto Rico*, 410 F.3d 17, 24 (1st Cir. 2005)). In New Jersey, "appeals from final judgments of courts . . . shall be filed within 45 days of their entry." N.J. R.A.R 2:4-1.

In the instant case, all of the *Rooker-Feldman* requirements are present. Lahijani lost in state court, as evidenced by the Judgment and the Judgment Lien. The Judgment is final, as the time to appeal has long since expired. Lahijani also affirmed the finality of the Judgment by specifically acknowledging it in the Consent Order in his previous bankruptcy case. The Judgment and the Judgment Lien existed before this case and the Motion and Objection were filed. Through his Plan and the Objection, Lahijani is asking this court to reject the Judgment (including appropriate interest) and the Judgment Lien. Under these circumstances, the *Rooker-Feldman* doctrine precludes this court from setting aside the Judgment and the Judgment Lien. They remain in place with the lesser principal amount due thereunder, as agreed to in the Consent Order. Any argument about the invalidity of post-judgment pleadings and service thereof or arguments about the ultimate rulings must be made before the state court, and candidly, have no impact on the original Judgment and Judgment Lien. The state court granted Mithani's motion to revive the judgment in 2013, thus it was clearly in place when the state court recently authorized the sale of

the Residence to satisfy the debt. Any argument that the Judgment and Judgment Lien have been extinguished should have been made before the state court.

Along with the foregoing, the Judgment Lien survived Lahijani's discharge as a matter of law. *See* 11 U.S.C. §522(c)(2)(A); § 523(a). The Consent Order specifically excepted $11,000 of the Judgment from discharge. *See also Johnson v. Home State Bank*, 501 U.S. 78 (1991); *Estate of Lellock v. Prudential Insurance Co.,* 811 F.2d 186, 188 (3rd Cir. 1987). There is no magical event or statutory scheme supporting Lahijani's discharged judgment-in-favor-of-a-federal-bankruptcy-judgment theory that changes this reality. The case law is clear. The Judgment and Judgment Lien survived the bankruptcy discharge, and the Consent Order did not provide otherwise. The evidence presented and the facts of the case reflect that Mithani possesses an allowed secured claim arising from the Judgment and Judgment Lien, with the interest rate to be determined by this court.

All remaining arguments, if any, put forth by Lahijani pertaining to the *secured* status of Mithani's allowed claim are without merit and/or have not been convincingly argued or supported so as to warrant further discussion.

### B. CLAIM CALCULATION

The parties agree that the principal amount of the allowed claim is $11,000. Doc. Nos. 37, 38. This court agrees.[8] Thus, that is the starting point. The remaining dispute concerns the rate of interest and allowance of costs as part of the allowed claim. In his last submission to this court, Mithani asserts he is owed $13,068, calculated with an enhancement in accordance with New Jersey Court Rule 4:42-11(a)(iii), and costs of $1,555, representing a Camden County sheriff's writ of execution filing fee and a foreclosure writ package issuance fee, for a total of $25,623. Doc. No. 38. Lahijani argues that Mithani is not entitled to costs, and while agreeing that Mithani is entitled to interest, argues that the interest rate should be calculated without the enhancement because the Consent Order fixed the amount due at $11,000. Doc. No. 37.

#### 1. INTEREST

In determining the pre-petition interest allowed on the Claim, the court need to look no further than the Judgment and the New Jersey Rules of Court. The Judgment provides for a sum certain "plus legal interest accruing thereafter." Doc. No. 28, Ex. A. The New Jersey Rules of Court provide for the legal interest rate for judgments, in relevant part:

> (a) Post Judgment Interest. Except as otherwise ordered by the court or provided by law, judgments, awards and orders for the payment of money, taxed costs and attorney's fees shall bear simple interest as follows:
>
> (i) []

---

[8] *See* footnote 4.

> (ii) For judgments not exceeding the monetary limit of the Special Civil Part *at the time of entry*, regardless of the court in which the action was filed: commencing January 2, 1986 and for each calendar year thereafter, the annual rate of interest shall equal the average rate of return, to the nearest whole or one-half percent, for the corresponding preceding fiscal year terminating on June 30, of the State of New Jersey Cash Management Fund (State accounts) as reported by the Division of Investment in the Department of the Treasury, but the rate shall be not less than 0.25%.
>
> (iii) For judgments exceeding the monetary limit of the Special Civil Part *at the time of entry*: in the manner provided for in subparagraph (a)(ii) of this Rule until September 1, 1996; thereafter, at the rate provided in subparagraph (a)(ii) plus 2% per annum.

N.J. Ct. R. R. 4:42-11(a) (emphasis added). *See also Crowley v. Chait*, No. 58-2441(HAA), 2005 WL 8165119, at *8 (D.N.J. 2005), *amended in part*, No. 85-2441, 2006 WL 8445577 (D.N.J. Mar. 7, 2006) (using the Special Civil Part limit as set forth in 6:1-2 to determine interest under 4:42-11); *see also Gentek Bldg. Products, Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 333 (6th Cir. 2007) (applying New Jersey judgement interest rate); *In re Tapmasters Chelsea, LLC*, 621 B.R. 580, 586 (Bankr. S.D.N.Y. 2020) (same); *Caldor, Inc. v. Logan Co.*, No. 90CIV.2929(FM), 2000 WL 1279797, at *1 (S.D.N.Y. 2000) (same). For purposes of part (a)(ii) and (iii), the monetary limit of the Special Civil Part was $10,000 *at the time of the entry of the Judgment*. N.J. Ct. R. R. 6:1-1 (1995). And because the Judgment *at the time of its entry* ($19,152) exceeded the monetary limit of the Special Civil Part ($10,000), Mithani is entitled to interest at the rate provided in subparagraph (a)(iii).[9] N.J. Ct. R. R. 4:42-11(a)(iii).

The fact that the rule provides that judgments "shall" bear simple interest makes clear that the application of post judgment interest is mandatory, not discretionary. The language "[e]xcept as otherwise ordered by the court" has been interpreted to permit trial courts the discretion to award a higher rate of interest when such an award would be fair and equitable. *See, e.g., Interchange State Bank v. Rinaldi*, 696 A.2d 744, 755 (App. Div. 1997) (allowing interest to run on the judgment at a higher contract rate in order to avoid prejudice to a mortgagee caused by delays in satisfying the judgment). This court is not aware of any cases in which courts have construed this provision to permit downward modifications of awarded interest, nor do the parties cite to any, or for that matter even raise this issue. Accordingly, this court holds that Mithani is entitled to interest on his allowed secured claim calculated in accordance with Rule 4:42-11(a)(iii) from the date of the Consent Order to the date on which Lahijani filed his petition.

---

[9] Interestingly, the result would be the same even if this court accepted Lahijani's position that the Consent Order was the controlling document because the claim in the Consent Order, *by its very own terms*, arose out of the Judgment, and **at the time of the entry** of the Consent Order, the nondischargeable claim was $11,000, while the monetary limit of the Special Civil Part for purposes of Rule 4:42-11(a) was still $10,000. N.J. Ct. R. R. 6:1-1 (1995).

The relevant post judgment interest rates made applicable through Rule 4:42-11(a)(iii) can be found at: https://www.njcourts.gov/sites/default/files/courts/civil/postprejudgmentrates.pdf.

For the time period at issue in this case, the rates are as follows:

| Year | Interest Rate |
|---|---|
| 1996 | 5.5% |
| 1997 | 5.5% |
| 1998 | 5.5% |
| 1999 | 5.5% |
| 2000 | 5.0% |
| 2001 | 5.5% |
| 2002 | 6.0% |
| 2003 | 3.0% |
| 2004 | 2.0% |
| 2005 | 1.0% |
| 2006 | 2.0% |
| 2007 | 4.0% |
| 2008 | 5.5% |
| 2009 | 4.0% |
| 2010 | 1.5% |
| 2011 | 0.5% |
| 2012 | 0.5% |
| 2013 | 0.25% |
| 2014 | 0.25% |
| 2015 | 0.25% |
| 2016 | 0.25% |
| 2017 | 0.50% |
| 2018 | 0.50% |
| 2019 | 1.5% |
| 2020 | 2.5% |
| 2021 | 1.5% |
| 2022 | 0.25% |

Based upon the foregoing chart and using $11,000 as the correct amount of Mithani's allowed secured claim, this court calculates interest due as follows:

| Time Period | Interest Rate | Interest Awarded |
|---|---|---|
| 1996 (7/29/96 (Judgment date) –9/1/96)   35 Days | 5.5% | $56.20 |
| 1996 (9/2/96 -12/31/96)      121 Days | 7.5% | $272.75 |
| 1997 | 7.5% | $825 |
| 1998 | 7.5% | $825 |
| 1999 | 7.5% | $825 |
| 2000 | 7% | $770 |
| 2001 | 7.5% | $825 |
| 2002 | 8% | $880 |
| 2003 | 5% | $550 |
| 2004 | 4% | $440 |
| 2005 | 3% | $330 |
| 2006 | 4% | $440 |
| 2007 | 6% | $660 |
| 2008 | 7.5% | $825 |
| 2009 | 6% | $660 |
| 2010 | 3.5% | $385 |
| 2011 | 2.5% | $275 |
| 2012 | 2.5% | $275 |
| 2013 | 2.25% | $247.5 |
| 2014 | 2.25% | $247.5 |
| 2015 | 2.25% | $247.5 |
| 2016 | 2.25% | $247.5 |
| 2017 | 2.5% | $275 |
| 2018 | 2.5% | $275 |
| 2019 | 3.5% | $385 |
| 2020 | 4.5% | $495 |
| 2021 | 3.5% | $385 |
| 2022 (From 1/1/22 - 6/14/22 (Petition Date) 164 Days | 2.25% | $111.21 |
| **Total Interest:** | | **$13,035.16** |

In short, Lahijani's calculations do not comply with Rule 4:42-11(a), as they ignore the specific that the rule requires calculation from the date of the Judgment. As noted above, Lahijani provided absolutely no authority for his contention that the Consent Order extinguished the (original) Judgment, and even if it did, the interest calculation on the $11,000 nondischargeable debt would not change. Likewise, Lahijani provided no support for his position that somehow the interest rate calculation scheme changes through the revival of the judgment, and this court has

found nothing to support such a theory. Again, such a result would contradict the plain language of N.J.S.A. § 2A:16-1 and ignore the fact that revived judgments relate back.[10] *Verner v. Bookman*, 31 S.E. 283, 284 (S.C. 1898); *King v. Morris*, 40 Ga. 63, 63 (1869). Consequently, this court rejects all of Lahijani's arguments and calculations.

This court also notes that Mithani's latest submission includes some miscalculations of interest. For example, at Doc. No. 38, p.7, Line 1, Mithani calculates interest at 7.5% from the exact date of the Judgment to the end of the year, for a total of 156 days. However, Rule 4:42-11(a)(iii) specifically states that the 2% per annum enhancement does start until after September 1, 1996. So, his calculation from July 29, 1996 (the date of the Judgment) to the year end is incorrect. In addition, Mithani's calculations for interest accrued in years that are leap years are incorrect. It appears that Mithani arrived at these figures by dividing the total interest for those years by 365, as if he were calculating per diem interest for an ordinary year, but then multiplied that interest by 366, hence the inflated interest on leap years. However, courts calculating interest under Rule 4:42-11(a) for time periods involving leap years have not awarded greater interest for leap years than for ordinary years. *See Salvatore v. Viking Sport Cruisers, Inc.*, No. CIV. 09-4817 NLH/KMW, 2012 WL 6112072, at *2 n.5 (D.N.J. Dec. 10, 2012); *Devine v. Advanced Computer Concepts Inc.*, No. CIV. 08-875GEB, 2009 WL 78158, at *4 n.1 (D.N.J. Jan. 9, 2009). Finally, Mithani miscalculated the interest that accrued during 2022.

Accordingly, in addition to the principal amount of **$11,000.00**, Mithani is entitled to a total of **$13,035.16** as allowed prepetition interest.

2. **COSTS**

Lahijani objects to any of the costs asserted by Mithani and notes many were not taxed costs approved by the state court. He also argues that Mithani's claim cannot include costs because the Consent Order entered in Lahijani's 1996 bankruptcy case entered judgment without costs. Doc. No. 37, p. 4. In response, Mithani filed a revised claim analysis and now only seeks total taxed costs in the amount of $1,555.12 for his efforts to execute on the Judgment in connection with sheriff fees ($55.12) and the "foreclosure writ package" ($1,500.00). *See* Doc. No. 38, p. 3. Lahijani's argument here is unpersuasive. This court reads the Consent Order to refer to costs associated with the adversary proceeding in Lahijani's 1996 bankruptcy case (something that is very commonplace in settled litigation) and not a limitation on recovery on the Judgment.

Taxed costs are recoverable under state law in which the Judgment arose. N.J. Ct. R. R. 4:42-8(a). Rule 4:42-8(a) provides: "[u]nless otherwise provided by law, these rules or court order, costs shall be allowed as of course to the prevailing party. The action of the clerk in taxing costs is reviewable by this court on motion." *Id*. Through the signed Writ of Execution, Doc. No. 31, pp .20–21, Mithani demonstrated that he was indeed charged sheriff's fees in the amount of $55.12. *Id.* Sheriff's fees are an allowable taxed cost that can be recovered. R. 4:42-8(a); N.J. Stat. Ann. §

---

[10] And because the Judgment Lien survived Lahijani's discharge in his earlier bankruptcy case as a matter of law, *Johnson v. Home State Bank*, 501 U.S. 78 (1991) and *Estate of Lellock v. Prudential Insurance Co.,* 811 F.2d 186, 188 (3rd Cir. 1987), and the Judgment was deemed nondischargeable through the Consent Order, there was no impediment to reviving the Judgment and Judgment Lien and having them relate back to their original dates. *See* 11 U.S.C. § 522(c)(2)(A); § 532(a).

22A:2-8; and N.J. Stat. Ann. § 2A:15-59. Accordingly, Mithani is entitled to recover that **$55.12** cost.

With regard to the "foreclosure writ package" cost of $1,500.00, such a cost is a recoverable cost under New Jersey law because "costs may include fees paid to a private person serving process pursuant to R. 4:4-3, but not in an amount exceeding allowable sheriff's fees for that service." N.J. Ct. R. R. 4:42-8(c). But Mithani has produced no evidence that cost was in fact paid and that it was assessed as a taxed cost capable of being reimbursed. Without proof of the charge and payment thereof, and an assertion that it is nonrefundable (since there was no sale as a result of the bankruptcy filing), this court cannot allow the fee at this time. Nevertheless, this court will give Mithani the opportunity to supplement the record to show that he actually paid the fee, it was not refundable, and he would be entitled to reimbursement pursuant to Rule 4:42-8 and section 22A:2-8.

Finally, the court notes that when calculating an allowed secured claim, section 506(b) provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b). Here, the value of the Residence ($98,100) is greater than the total of the allowed secured claims of $77,807 (PNC Mortgage = $52,184.46 and Mithani's alleged $25,623). As a result, Mithani is entitled to interest on his allowed secured claim, as well as any reasonable fees, costs, or charges, as long as they are provided for under the agreement or State statute under which such claim arose. Interest must be paid post-petition. Consequently, Mithani must modify his proposed chapter 13 plan to properly account for Mithani's allowed secured claim as determined hereunder.

## CONCLUSION

Based on the foregoing, the objection is overruled, and the Motion is granted to the extent that Mithani shall be entitled to an allowed total prepetition secured claim of **$24,090.28 ($11,000.00 principal + $13,035.16 interest + $5512 costs)**, pending further order of this court on the foreclosure writ package costs.

Since Mithani is entitled to post-petition interest on his allowed secured claim pursuant to 11 U.S.C.A. § 506(b), Lahijani must modify his chapter 13 plan to properly account for the allowed secured claim.

Mithani shall have three weeks from the date of this Opinion to supplement the record concerning his entitlement to being reimbursed for the "foreclosure writ package" in the amount of $1,500, with the failure to do so barring any further recovery on that cost. Lahijani shall have one week from the date the supplemental pleading is filed with the court to respond to any supplemental submission. The matter will be considered on the papers.

An appropriate judgment has been entered consistent with this decision.

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: December 22, 2022